IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Miguel Rizo, Jr., et al.,                                          Case No. 3:09CV2848

          Plaintiffs

     v.                                                          ORDER

Midwest Terminals of Toledo,
         International, Inc., et al.,

          Defendants

 

This is a hybrid duty of fair representation and breach of collective bargaining agreement suit

brought under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, by labor

union members against their union, employer, and two former union officials.[1] Plaintiffs, Miguel

Rizo, Jr. and Mario Rizo, are both members of defendant International Longshoremen's Association

Local 1982 (Local 1982). Defendant Midwest Terminals of Toledo (Midwest) is their employer.

        Plaintiffs allege: 1) Midwest breached and tortiously interfered with the collective bargaining

agreement when Midwest hired non-Local 1982 union members; 2) Local 1982 failed in its duty to

---

[1] International Longshoremen's Association, AFL-CIO, CLC; Atlantic Coast District, International Longshoremen's Association, AFL-CIO (Atlantic Coast District); and Charles and Robert Moody were originally parties to this case. Plaintiffs voluntarily dismissed them. [Docs. 18, 23].

intervene on plaintiffs' behalf in Midwest's breach; and 3) Local 1982 breached its fiduciary duty by failing to intervene on plaintiffs' behalf in response to Midwest's breach of the collective bargaining agreement.

Jurisdiction is proper under 28 U.S.C. § 1331. Defendants' motions to dismiss [Doc. 27-1 and Doc. 29-1] are pending. For the reasons discussed below, the motions shall be granted.

**Background**

On January 1, 2006, Local 1982 and Midwest entered into a collective bargaining agreement (contract). The contract stipulated that Midwest would create and implement a training program for Local 1982 members. It also required that Local 1982 members perform all work falling under the contract.

Midwest subsequently hired non-Local 1982 members to do work that plaintiffs allege fell under the contract.

In late 2008 or early 2009, plaintiffs filed a claim with the National Labor Relations Board (NLRB).

Plaintiffs also filed complaints with the International Union's Atlantic Coast District. They complained that Local 1982 President Charles Moody, and Dock Steward Robert (Bobby) Moody failed to act on their grievances regarding improper hiring and training practices. They alleged that the Moodys failed to pursue violations of the contract by Midwest.

A committee of the Atlantic Coast District suspended both Moodys on April 3, 2009, based on plaintiffs' complaint.

2

On April 6, 2009, the Atlantic Coast District removed the Moodys from office, and gave control of Local 1982 to Miguel Rizo, Sr. (plaintiffs' father). Rizo, Sr. has been the acting President of Local 1982 ever since.

In a letter dated August 31, 2009, the NLRB ruled that plaintiffs' allegations that the Local 1982 failed to process grievances relating to training opportunities had merit. The NLRB dismissed plaintiffs' other complaints. The NLRB set a September 14, 2009, appeal deadline for its decision.

Plaintiff filed the instant suit on December 8, 2009.

## Standard of Review

I consider defendants' motion as one for summary judgment, because the parties have submitted, and I have examined, materials outside the pleadings.[2] Fed. R. Civ. P. 12(d). I have broad discretion to do so, especially where the plaintiff has an opportunity to respond. *Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000).

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477

---

[2] Local 1982 attached to its motion to dismiss an affidavit of Miguel Rizo, Sr., and exhibits thereto, including an Atlantic Coast District Committee Report of Findings and Recommendations, and a letter from the Atlantic Coast District President to Charles and Robert Moody. [Doc. 27-2]. Plaintiffs, in opposition, attach their own affidavits [Docs. 31-4, 31-5] and various letters regarding their NLRB complaints, [Docs 31-1, 31-2, 31-3].

U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc*., 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

## Discussion

### I. Preemption of State Law Claims

Plaintiffs assert various state law claims. LMRA § 301 preempts state law claims which are "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985); *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987) (stating that when the state law claim depends on a clause in the collective bargaining agreement state law is pre-empted.); *Adkins v. General Motors Corp*., 946 F.2d 1201, 1206 (6th Cir. 1991) (finding fraud and tortious interference with contract claims preempted by § 301).

A claim is also preempted when "the right asserted  .   .   is defined by the contractual obligation of good faith." *Allis-Chalmers Corp.*, *supra*, 471 U.S. at 218.

Plaintiffs' state law claims are: 1) Midwest breached the collective bargaining agreement by hiring  non-Local 1982 union members to do work that the collective bargaining agreement required be performed by Local 1982 members; 2) breach of fiduciary duty by Local 1982 when it failed to intervene on plaintiffs' behalf in response to Midwest's breach of the collective bargaining

4

agreement; 3) intentional failure to act in the best interests of the union members by Local 1982; and 4) tortious interference with contract.

Evaluating each of plaintiffs' claims necessitates analyzing the terms of the contract and the duties the contract imposed. Plaintiffs' state law claims thus depend on an interpretation of the collective bargaining agreement and are thus preempted. *Id.* at 220; *Adkins*, *supra*, 946 F.2d at 1206. I therefore analyze plaintiffs' claims solely under § 301.

## II. Statute of Limitations

The limitations period for filing a § 301 claim is six months. *DelCostello v. Teamsters*, 462 U.S. 151, 172 (1983).

Defendants argue that plaintiffs' claims are time-barred. Defendants assert that the statute of limitations began to accrue, at the latest, on April 6, 2009, when Local 1982 removed two union officials – Charles and Robert Moody – from union office.

Plaintiffs do not dispute removal of the Moodys as of this date. They contend in response: 1) the statute of limitations did not begin to accrue until September 14, 2009 – the final date to appeal the NLRB's determination;[3] and, in the alternative, 2) equitable tolling or equitable estoppel tolled the statute of limitations because defendants concealed an illegal agreement.

This action is a § 301 hybrid action because plaintiffs bring it against both the union and their employer. "[S]eparate causes of action in a hybrid § 301/fair representation claim accrue," the Sixth Circuit has held, "simultaneously, and  .  .  .  the timeliness of the suit must be measured from the date on which the employee knew or should have known of the union's final action or should

---

[3] Plaintiffs acknowledge that proceedings before the NLRB do not toll the statute of limitations for purposes of a § 301 action. *Adkins v. Int'l Union of Elec., Radio & Mach. Workers*, 769 F.2d 330, 335 (6th Cir. 1985).

have known of the employer's final action, whichever occurs later." *Robinson v. Central Brass Mfg. Co.*, 987 F.2d 1235, 1239 (6th Cir. 1993) (internal citation and quotation omitted).

The statute thus begins to run "when the claimant discovers, or in the exercise of reasonable diligence should have discovered the acts constituting the alleged violation." *Chrysler Workers Ass'n v. Chrysler,* 834 F.2d 573, 581 (6th Cir. 1988). "[T]he asserted actual knowledge of plaintiffs is not determinative if they did not act as reasonable persons and, in effect, closed their eyes to evident and objective facts concerning accrual of their right to sue." *Id.* at 579.

Prolonged inaction by the union suffices to give a diligent plaintiff notice that the union has breached its duty of fair representation. *Gately v. Textron, Inc.*, 125 F.3d 855 (6th Cir. 1997) (table); *accord Pantoja v. Holland Motor Express, Inc.*, 965 F.2d 323, 327 (7th Cir. 1992).

Plaintiffs filed the instant complaint on December 8, 2009. To be timely, therefore, either plaintiffs' claims accrued on or after June 8, 2009, or there must be some reason to toll the statute of limitations.

Countering the defendants' claim that the limitations period began on April 6, 2009, the date of the Moodys removal, plaintiffs argue: "All the findings by the International Longshoreman's Association with regard to the Moodys, and their removal on April 6, 2009, is nothing more than probable cause until some controlling body of authority makes a decision based on facts." [Doc. 31, at 5]. According to plaintiffs, the NLRB's decision was their first "definitive proof of wrongdoing." [*Id.*, at 6].

This is not the standard. The statute of limitations begins when plaintiffs "knew or should have known of the union's final action or should have known of the employer's final action,

whichever occurs later," *Robinson*, *supra*, 987 F.2d at 1239, not when an agency makes a definitive ruling.

The gravaman of the contentions in both the instant complaint, and in the complaints with the Atlantic Coast District which precipitated the removal of the Moodys, are substantially the same. Both rest on allegations that the Moodys, acting on behalf of the union, failed to process grievances and failed to pursue violations of the collective bargaining agreement. Both also complain about Midwest's hiring of non-Local 1982 union members to perform certain work.

Plaintiffs thus indisputably knew, at the latest, of Midwest's actions in hiring non-Local 1982 members, and of the Local 1982's alleged failure to represent their interests, when the Moodys were removed from office as a result of their complaint. Plaintiffs certainly knew of Local 1982 and Midwest's actions because they filed complaints with both the NLRB and the Atlantic Coast District.

The alleged violations of § 301 occurred while the Moodys controlled Local 1982. Reasonable persons in plaintiffs' position would be able to determine that with the Moodys' removal, objective facts and evidence existed sufficient to set forth a suit for alleged breach of fair representation. *Chrysler Workers Ass'n*, *supra*, 834 F.2d at 581.

I therefore find that the limitations period began running, at the latest, on April 6, 2009. The limitations period on these claims thus expired on October 6, 2009, unless there is a reason for tolling its running.

Plaintiffs argue that defendants' misrepresentations led them to delay filing. Specifically, plaintiffs argue that such misrepresentations toll the statute on the basis of equitable estoppel or equitable tolling. I find neither doctrine applicable.

7

## A. Equitable Estoppel

Equitable estoppel prevents a defendant from asserting the statute of limitations as a defense if a defendant takes active steps to prevent a plaintiff from filing suit within the limitations period. *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 420 (6th Cir. 2009) ("[E]quitable estoppel applies when plaintiffs are aware of their claims but defendants' conduct prevents plaintiffs from timely filing suit."); *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 891 (6th Cir. 2004) ("Equitable estoppel, sometimes referred to as fraudulent concealment, is invoked in cases where the defendant takes active steps to prevent the plaintiff from suing in time, such as by hiding evidence or promising not to plead the statute of limitations); *see also* Wright & Miller, FED. PRAC. & PROC. § 1056 ("[E]quitable estoppel  .  .  .  hinges on the defendant's representations or other conduct that prevents the plaintiff from suing before the statute of limitations has run).

There are five elements of an equitable estoppel claim:

1) there must be conduct or language amounting to a representation of a material fact; 2) the party to be estopped must be aware of the true facts; 3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; 4) the party asserting the estoppel must be unaware of the true facts; and 5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*Egerer*, *supra*, 556 F.3d at 425.

Plaintiffs argue that "[t]he actions of the defendants to hinder the process, and stall the normal grievance procedure, coupled with what can only be characterized as non-feasance, requires the date to which the six-month statute of limitations begins to run is much later." [Doc. 31, at 4-5].

Plaintiffs argue that equitable estoppel requires tolling here because defendants hid an "illegal agreement" from them. [*Id.*, at 6].

8

Plaintiffs, however, have not asserted any affirmative acts by defendants that prevented plaintiffs from timely filing the instant suit. Plaintiffs, additionally, have not alleged that they detrimentally relied on any representation by the defendants which prevented them from timely filing. *See Egerer*, *supra*, 556 F.3d at 425.

As discussed above, the allegations against Local 1982 in the complaint in the instant case and those in the NLRB complaint are substantially the same. Both contain assertions that the Moodys did not properly process grievances and willingly permitted Midwest to breach the collective bargaining agreement by hiring non-Local 1982 workers. Well before the limitations period, plaintiffs knew of the facts underlying the instant complaint. Because they have alleged no action by defendants that would prevent them from filing a timely complaint, their contention that equitable estoppel applies has no merit.

## B. Equitable Tolling

The doctrine of equitable tolling allows a court to toll a statute of limitations when a litigant's untimely filing was unavoidable due to circumstances beyond his control. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 1988); *see also* Wright & Miller, FED. PRAC. & PROC., § 1056 ("[E]quitable tolling  .  .  .  halts the running of the limitations period so long as the plaintiff uses reasonable care and diligence in attempting to learn the facts that would disclose the defendant's fraud or other misconduct."). Equitable tolling "should be invoked only in rare cases where the facts illustrate that the plaintiffs' case is compelling." *Leeds v. Potter*, 249 F. App'x 442, 447 (6th Cir. 2007) (unpublished disposition).

Plaintiffs allege that a secret illegal agreement kept them from obtaining the necessary information to file a timely complaint. Plaintiffs argue they were "unable to obtain vital information

bearing on the existence of his claim, such as this mythical Agreement, between the defendants, which no one seems to have." [Doc. 31, at 10].

This argument it without merit for the same reason the equitable estoppel argument is without merit. Plaintiffs had knowledge of the violations alleged on or before April 6, 2009 as evidenced by the complaints lodged with the Atlantic Coast District and the NLRB.

Plaintiffs knew of the facts constituting the alleged breach on or before April 6, 2009. Plaintiff knew Local 1982 was not pursuing its grievances and knew that Midwest had hired non-Local 1982 workers to perform work plaintiffs allege was theirs under the contract.

The statute of limitations on plaintiffs' complaint therefore ran at the very latest on October 6, 2009, and plaintiffs' December 8, 2009, complaint is untimely.[4]

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendants' motions to dismiss, which have been converted to motions for summary judgment on the statute of limitations issue, [Doc. 27-1; Doc. 29-1] be, and the same hereby are granted.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge

---

[4] Defendants also contend that plaintiffs' claims must be dismissed for improper service of process and because plaintiffs failed to plead exhaustion of internal union remedies. Because the statute of limitations argument is well taken, I do not reach these arguments.

10